


FILED

Jun 17 2019, 11:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-DI-574

## In the Matter of
## Hilary Bowe Ricks,
*Respondent.*

Decided: June 17, 2019

Attorney Discipline Action

Hearing Officer Jonathan M. Brown

**Per Curiam Opinion**

Chief Justice Rush and Justices Massa and Goff concur.
Justices David and Slaughter concur in part and dissent in part.

**Per curiam.**

We find that Respondent, Hilary Bowe Ricks, committed attorney misconduct by neglecting clients' cases and by failing to cooperate with the disciplinary process. For this misconduct, we conclude that Respondent should be suspended for at least two years without automatic reinstatement.

This matter is now before us on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's amended disciplinary complaint. Respondent's 1986 admission to this state's bar subjects her to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

## Procedural Background and Facts

The Commission filed a "Disciplinary Complaint" against Respondent on November 20, 2018, which it later amended. Respondent was served with the amended complaint but has not appeared, responded, or otherwise participated in these proceedings. Accordingly, the Commission filed a "Motion for Judgment on the Complaint," and the hearing officer took the facts alleged in the amended disciplinary complaint as true.

No petition for review of the hearing officer's report has been filed. When neither party challenges the findings of the hearing officer, "we accept and adopt those findings but reserve final judgment as to misconduct and sanction." *Matter of Levy*, 726 N.E.2d 1257, 1258 (Ind. 2000).

**Count 1.** In 2013, "Client 1" contacted Respondent regarding his desire to pursue an expungement of various past criminal proceedings. In April 2014, Respondent told Client 1 she would charge $991 for the requisite case filings and $250 to attend any hearing. Respondent required Client 1 to pay $691 of that amount up front in three biweekly installments, which Client 1 did. In the ensuing three-plus years, Respondent never filed an expungement petition on Client 1's behalf and

rarely responded to Client 1's inquiries. In mid-2017, Respondent told Client 1 that his expungement petition was "next on my list."

Client 1 filed a grievance with the Commission in November 2017. Respondent did not timely respond to the Commission's demand for information and a subsequent subpoena duces tecum, prompting the initiation of two separate show cause proceedings. Respondent belatedly complied with the demand and the subpoena. Respondent told the Commission that she did not file Client 1's expungement petition because he had not paid sufficient fees; yet, Client 1 paid the upfront installments Respondent had requested, and Respondent never told Client 1 that she was delaying action because of fees owing.

Respondent did not refund unearned fees to Client 1 or surrender any completed work to Client 1.

**Count 2.** In 2012, "Client 2" hired Respondent to pursue post-conviction relief ("PCR") on his behalf. Respondent charged and collected $8,500 ($3,500 to review the case and $5,000 to file a petition and litigate it until a ruling was reached). For the next three years, Respondent grew increasingly less responsive to inquiries from Client 2 and his wife. Respondent filed an amended PCR petition in October 2015, and an evidentiary hearing was set for December 18, 2015.

Two days before that hearing, Respondent successfully moved for a continuance. Respondent did not communicate with Client 2 about the continuance, causing inconvenience to friends and family members of Client 2 who had appeared for the vacated hearing after taking time off from work.

The hearing was reset for April 1, 2016. Respondent failed to subpoena necessary witnesses or arrange for Client 2 to be transported to the hearing. Respondent filed a motion for continuance the day before the hearing, which the court denied. Both Respondent and Client 2 failed to appear for the April 1 hearing, and the court entered judgment for the State on the merits.

Respondent did not refund the $5,000 in unearned fees until after a grievance was filed against her in this matter.

**Count 3.** In January 2013, "Client 3" hired Respondent to pursue PCR on his behalf. Respondent charged and collected $8,500 ($4,000 to review the case and $4,500 to file a petition and litigate it). At Respondent's urging, Client 3 filed a *pro se* PCR petition in March 2013. Thereafter, a public defender appeared on behalf of Client 3 and performed a significant amount of work on the case.

In November 2015, Respondent appeared for Client 3 and the public defender withdrew. A hearing was set for December 28, 2015. On the day of the hearing, Respondent informed the court by phone she was ill, and the court continued the hearing without resetting it.

In May 2017, the court set Client 3's case for a Trial Rule 41(E) hearing due to Respondent's failure to prosecute the case. On June 26, the day before the scheduled hearing, Respondent successfully moved to vacate the hearing and set the matter for an evidentiary hearing, which the court scheduled for October 11, 2017.

On October 10, the court granted a continuance pending negotiation of an agreed resolution and sentence modification and reset the hearing for January 3, 2018. Despite the State's agreement to a modification, Respondent failed to follow through and file a motion to modify Client 3's sentence. Respondent also did not move to continue the January 3 hearing or arrange to have Client 3 transported for that hearing, and she ignored multiple phone queries from court staff about these matters in the days leading up to the hearing. Respondent then failed to appear at the January 3 hearing. The court removed her as counsel and appointed a public defender.

Respondent did not refund the $4,500 in unearned fees until after an investigation was undertaken by the Commission.

**Count 4.** "Client 4" retained Respondent in early 2016 to assist him with a sentence modification. Respondent charged and collected $850 up front. For a very brief period of time Respondent was responsive and worked on the matter, but she quickly grew unresponsive to inquiries and ultimately did not appreciably advance the case. Respondent did not

timely refund unearned fees despite assurances provided by her assistant that she would do so.

## Discussion and Discipline

We concur in the hearing officer's findings of fact and conclude that Respondent violated these Indiana Professional Conduct Rules prohibiting the following misconduct:

> 1.3: Failure to act with reasonable diligence and promptness.
>
> 1.4(a)(3): Failure to keep a client reasonably informed about the status of a matter.
>
> 1.4(a)(4): Failure to comply promptly with a client's reasonable requests for information.
>
> 1.4(b): Failure to explain a matter to the extent reasonably necessary to permit a client to make informed decisions.
>
> 1.16(d): After the termination of representation, failure to refund an unearned fee and failure promptly to return to a client case file materials to which the client is entitled.
>
> 8.1(b): Failure to respond in a timely manner to the Commission's demands for information.
>
> 8.4(d): Engaging in conduct prejudicial to the administration of justice.

Respondent's multiple transgressions in this case are but the latest chapter in a lengthy history of shirking her professional duties toward clients, courts, and the Commission. Respondent has been suspended twice before for substantially identical misconduct. In 2005, we suspended Respondent for six months (all stayed to probation) for, among other things, neglect of multiple post-conviction matters. *Matter of Ricks*, 835 N.E.2d 208 (Ind. 2005). In 2018, we suspended Respondent for 180 days (with 90 days actively served and the balance stayed to probation) for

neglect of multiple post-conviction matters and noncooperation with the Commission. *Matter of Ricks*, 102 N.E.3d 883 (Ind. 2018) ("*Ricks II*").[1]

In recent years, Respondent also has been the subject of five separate show cause proceedings arising from her noncooperation with investigations by the Commission into grievances filed against Respondent. Further, while outside the record of these disciplinary proceedings, we judicially note that Respondent has been found in contempt of this Court for disobedience to our orders demanding the return of appellate records to the Clerk and, as a sanction, she has been barred from withdrawing further records in cases over which this Court has exercised jurisdiction.[2]

The instant case – the third disciplinary prosecution against Respondent for the same type of systemic negligence that has characterized her career – makes clear that her professional shortcomings have not been remedied and in fact are growing worse. Respondent's refusal to appear or participate in these proceedings, while already on disciplinary probation, reinforces this conclusion. The hearing officer succinctly summed up these aggravating factors and others in concluding that "Respondent cannot be safely recommended to the public as a lawyer who they can trust to handle their affairs." (HO's Report at 26).

To protect the public, and in particular the vulnerable clientele within Respondent's niche practice, we conclude that a lengthy period of suspension without automatic reinstatement is both necessary and appropriate. In order to gain reinstatement following the conclusion of her minimum term of suspension, Respondent will bear a heavy burden of clearly and convincingly establishing her fitness to resume practice. While

---

[1] Respondent's automatic reinstatement was delayed beyond the initial 90-day term in *Ricks II* due to her belated and incomplete compliance with the terms of her suspension and the duties of a suspended attorney. As of this writing, a petition to revoke Respondent's probation in *Ricks II* is pending.

[2] *See Shane v. State*, No. 68S00-9710-CR-526 (orders issued Aug. 10, 2011 and Feb. 13, 2012).

there exists very little in this record suggesting Respondent will be capable of doing so, we choose not to close that door entirely.

# Conclusion

The Court concludes that Respondent violated Professional Conduct Rules 1.3, 1.4(a)(3), 1.4(a)(4), 1.4(b), 1.16(d), 8.1(b), and 8.4(d). For Respondent's professional misconduct, the Court suspends Respondent from the practice of law for a period of not less than two years, without automatic reinstatement, effective immediately. At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(18).

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

Rush, C.J., and Massa and Goff, JJ., concur.
David and Slaughter, JJ., concur with the findings of misconduct but dissent as to sanction, believing that Respondent should be disbarred.

NO APPEARANCE FOR THE RESPONDENT


ATTORNEYS FOR INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Director
Angie L. Ordway, Staff Attorney